118-0151 Ezekiel R. Sheedock v. City of Chicago Good morning, Council. Frank Cresson, we have Ezekiel here at Sheddock. I wanted to begin with a philosophical question. If a tree falls in the middle of Ogden Avenue and Mercy doesn't document it, did it even happen? And that's what happened in this case. The gentleman was working for the Department of Forestry and his testimony was that he was in the middle of Ogden Avenue when a tree weighing about 400 pounds fell on him and struck him through to the ground. He sustained an injury in that accident. All right, so the Commission found that the plaintiff's medical records did not support his testimony of any need for emergency services after September 14th. So wasn't there evidence he went to the emergency room on September 14th? There was, and it's highlighted in my brief, and I printed it off because it's right here. It's a billing statement dated 9-14-2007, page 520 in the record that shows he's at the emergency room. Dr. Tu gave a causation opinion that there was a causal relationship between the injuries he related in his history and his current condition. Was there any contrary medical opinion? I didn't see one medical opinion that indicated that his condition was not causally related. And I highlighted the independent medical examinations that this gentleman went to, and the history provided to Dr. Tu on page 931 of the record, Dr. Gray on page 955. It's all consistent. This tree fell on him causing these injuries. His testimony was that his supervisor took him to Mercy. He said, was that Mercy Works or Mercy Hospital? And he said Mercy Hospital. I believe it's Mercy Works as evidenced by the billing statement from Mercy Works showing he was there for emergency room care. Obviously, I'm not saying that this record is complete. It's woefully insufficient. There's a four-and-a-half-month gap before we see anything indicating a work-related accident. But what we have is a complete absence of anything contradicting the petition of the plaintiff in this matter. Well, you've got an invoice for the treatment at Mercy Works on September 14, 2007. The invoice is dated February 2016. It specifically says that he presented for a tear in the medial cartilage meniscus of the right knee, right knee arthroscopy, left shoulder rotator cuff tear, left shoulder arthroscopy, RTC repair. So it would appear as if Mercy Works invoiced the city for treatment on September the 14th. You're absolutely correct, Your Honor. It's been my position on this case since February of 2016 when we tried the case. We tried the case on February 29th of 2016. The record, you can look to page 748. I received a fax from Mercy Works on 2-25-16. Again, my attempts to try to get this record as complete as I could up until the three or four days prior trial. And at the end of the day, we put the records into the evidence, created a record, excuse me, as best we could based upon the parts he was able to provide to us. Well, you've got evidence beyond September 14th. Didn't the commission receive evidence that he received follow-up treatment at Mercy Works on September 17th, 2007, and October 1st, 2007? Wasn't it in the record? It's in the record, yes. It's there. So it wasn't as if he had an emergency room visit. There was a clear line of following up at Mercy Works itself, right? Absolutely. And, again, a complete, consistent history every single time he saw a doctor, when he gave his testimony, I feel it is significant to note that Mercy Works is the clinic or the defendant in this matter. And in the face of that, the commission found, quote, unquote, without medical evidence of his complaints, symptoms, and reports, description of an injury, support of his testimony and clinical examination, they found that it was not sufficient. They found it was not sufficient out of 100 percent of the evidence in this case. We're talking about manifest weight. We have a burden of manifest weight in this matter. We have to show the opposite conclusion is clearly the proper one, and it is in this matter, because 100 percent of the evidence points to this accident on 9-14 of 2007, where a tree struck this man, causing him to have a knee surgery, a shoulder surgery, functional capacity evaluation, permanent restrictions that ultimately left his inability to return to work for the city. And he had found a job making $10 an hour or so, and had established, in my mind, obviously the commission disagreed with me. That's what's important here. Entitlement to a lifetime of benefits under Section 81, and it all went away because of what I feel is an inability of the respondent's company clinic to document these records properly and provide them for someone to submit them. And a travesty happened to this claimant because of it. Well, be careful about that argument, because are you going to tacitly concede that there's evidence lacking of follow-up treatment? I see your argument. I see your frustration. But I think you can make a very strong argument that the medical records that were, in fact, there, show an emergency room visit and full follow-up treatment. Those that were there, certainly the only inference that can be drawn is that he was there on that day. Yeah. Mercy Works had no medical records of him. What they did is they invoiced him. And the evidence of what they did is contained within the invoice that came in February of 2016. Absolutely. And for those reasons, it is my position that this is 100 percent against the man who submitted the evidence and should be remanded to the commission, reversed on accident, have them decide to call a follow-up connection because they didn't get there. Arbitrator Williams didn't get there, and the commission affirmed and adopted him. Let's talk about follow-up connection and how to compensate this man for the permanent disability that he sustained once we get past accident. Okay. Counsel, we'll give you some time. We're going to call the city. May it please the Court. Counsel, good morning. Your Honor, this is Christopher Tarco. I'm the acting respondent. I'm the lead in the city of Chicago. Your Honor, I'm here today to ask you to affirm the decision that the Homeowners' Compensation Commission has been opposite in conclusion. It's not clearly apparent. What evidence is there on the record that this man didn't sustain an injury in September of 2007? I don't think there's any evidence that says he didn't sustain an injury. However, I do think that the record is incomplete and the claimant didn't do his burden of proof on the issue of accident. Specifically, the fact that he testified that he was injured at work in September 2007, yet there's no medical records to support that. What's the invoice that went from Mercy Works to the City of Chicago's Finance Committee dated February 25, 2016 for? Well, it's an invoice saying that there was treatment on that date. However, there's no indication that it was related to a work injury. There's no medical records to support that. Wait a minute. What did the man testify as to the date of his injury? Well, he testified that he was injured on September 14th. And the invoice from Mercy Works says that they are billing for treatment they rendered on what date? I believe it was an invoice that says there was treatment on September 14th. So what was the treatment for? I don't know. In fact, the claimant didn't... Well, did anyone say he wasn't injured? No, Judge, but... So you got his unrebutted testimony that he was injured on September the 14th. He goes to Mercy Works, and he is treated for... I could read the list again, but I read it once already. All of these maladies with his knee and his shoulder. And you're suggesting that it's within the manifest way of the evidence to say he wasn't injured and he was never treated? Judge, it's my position that the claimant did not need his burden of proof at trial. Why? What was missing? The medical records that show that he actually went to the ER or the Mercy Works that day... Well, what is this, a fraudulent invoice from Mercy Works to the Finance Committee? I wouldn't say that. Well, if it is, we should call the police if they're issuing fraudulent invoices. I mean, the city isn't going to pay a fraudulent invoice, are they? The whole police department is going to investigate it. We don't have to stop there. This isn't piling in, but in addition, what about the invoice they issued for treatment of the claimant at Mercy Works on September 17th and October 1st? You don't deny they billed for treatment on that date, do you? I do not deny that that's what the bill stated. So what would it be for then, if it wasn't for the treatment as he said? Judge, I don't know, because there's no records to support it. Is that his fault? Judge, yes, it is his fault. It's his burden of proof. Wait a minute. That's your clinic. That's the clinic you sent him to. And they invoiced you for all this medical treatment for the injuries he claims he suffered. No one disputes that he actually had the accident on September the 14th. And you haven't got a single medical opinion in this record to say this man's not hurt. Correct. How did you win this case? Well, because of burden of proof. Can we talk about that? Because you're saying that, according to you, tell us if we missed something. You've got the Henri Brother testimony of the claimant, documenting what happened to him. He testifies, documenting he went to Mercy Work on these dates. Coincidentally, you have, and you just admitted on the record, invoices for treatment on the dates he says he was there. You have nothing on the other side. How can that be consistent with the manifest way of the evidence? You have no evidence on your side of the case. He's got the evidence over here. How can you possibly argue he didn't meet his burden? Simply because, just because there's invoices that exist in the record that do not state what the mechanism of injury was, what the treatment was. No, Dr. Tu supplied that testimony. He said that the mechanism of injury that was described to him by the claimant was consistent with the mechanism for the development of a traumatic rotator cuff tear. He concluded that the injuries were causally related to the accident of September the 14th, 2017. And Dr. Graf, who was the Section 12 IME, it was his opinion that he go on light duty because of the injury on September the 14th. Then we got Dr. Grab and Lazar and the report of the occupational injury or illness dated September 18th, 2007. And in the face of all that evidence, you contradicted that evidence in what way? Well, Judge, I don't believe those physicians reviewed any of the records from Mercy Works because not many records exist. In fact, if you look at the exhibits from Mercy Works, they show treatment for this climate from February 2007 all the way up until two days before September 2007. So, magically, those records exist for dates that predate Mr. Hiroshima's injury, but they don't exist for the date following that? Dr. Garapatti had an opinion on that. He said the patient did have some pre-existing degenerative joint disease of his knee prior to this accident, given his age, blah, blah, blah. However, this degenerative joint disease was completely asymptomatic at the time and has only become symptomatic since his accident of September 2007. Well, I believe that the records for February 2007 through September 12th, 2007 pertain to an other-legged hand injury. It wasn't necessarily for the knee. However, it's our position that without those records, the claimants' claim must fail simply because there's nothing to corroborate. So we should announce a rule of law that if the medical treatment facility doesn't, whatever reason, document the nature and extent of what happened, even though there's undisputed records that the claimant was there, he testifies to, then the claimant should always lose. Is that what you want us to announce? Your Honor, I simply would like this Court to uphold the fact that the claimant did not need his verdict proof. There's ways that the claimant could enforce his subpoena through Section 16, through circuit court actions. If he didn't think that the record was sufficient to proceed to trial, he could have taken those actions prior to proceeding. But even absent that, the totality of all the evidence in the testimony and the doctor's clear opinions, Justice Hoffman alluded to, were all on the side of the claimant. There was nothing you have on the other side except to argue he didn't need his verdict. No, Your Honor, but what we're looking for is the fact that there's not any contemporaneous medical records for four months after the accident. What in heaven's name are the invoices for Mercy Works 4? Your Honor, I don't know. Don't you think it's coincidental that the invoice is for treatment on the very day he claimed he was injured? It certainly is. However, I think that it would require speculation to indicate that he was injured. Speculation? Certainly, because those invoices don't say what the mechanism of injury is. No, Dr. Graff supplied that. Well, Dr. Graff supplied that based on what the claimant reported to him. Is there anything in the record that suggests that the complainant is untruthful? Is there any, any testimony in the record that contradicts what this man said? Aside from the fact that there's a four-month gap in treatment in the record, Your Honor, I would say that. Wait a minute, hold on. There's a four-month gap in treatment. I'm missing something. Wait a minute. Four-month gap in treatment. September 14, 2007 was the day he claimed he was injured? Yes, Judge. And the invoice from Mercy Works says the treatment was on September the 14th, 2007? However, that invoice, Your Honor, does not state what the mechanism of injury was for. So what? He was treated on September the 14th for a knee injury, wasn't he? Yes, however, we don't know if that's related to a work injury, Your Honor. He said it was, and there's nobody that contradicts him. Correct. There's nothing to corroborate in his testimony. Dr. Graff corroborates it when he says the mechanism of injury that he described is consistent with the injury he received. No contrary? Based on the history of the treatment of Dr. Graff, I understand that. Okay. All right. I mean, we're beating you up pretty bad, but I think we get the drift. We don't understand how this happened. I understand. It remains my position that those billing statements aren't sufficient to prove a work accident, simply because relying on those billing statements requires speculation that they're related to a work injury. There's nothing in there that says what the mechanism of injury is for, the cause of the injury, frankly, the medical treatment that was provided. So how would it require investment speculation to relate those back to the claimants? I think we understand your argument. Whether we will ultimately agree with it, we'll have to decide later. I understand. Finally, Your Honors, I just submit that, pursuant to Section 8A, payment of benefits is not an issue of liability. There's a significant amount of benefits paid. There's no question about that. Case law in the act. There's no problem with that. Thank you, Your Honors. Thank you. With that said, I ask that you refer the decision to the commission. As a result, an opposite conclusion is not clearly apparent. Okay. Rebuttal? I will be extremely brief and just reiterate that 100% of the evidence is on the claimant's side of this payment. Thank you so much. Counselors, thank you. We have a brief recess before the third case.